CASE NO. 25-1978

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

JOSE DANIEL CONTRERAS-CERVANTES; FREDY DE LOS ANGELES-FLORES; MARIELA VIRGINIA OCANDO-LEON; LUIS FELIPE JARQUIN-JARQUIN; DEBBIE VASQUEZ-CRUZ; JAIRO MANUEL GODOY-PEREZ; MARIFER DIAZ-ALCANTAR; MIGUEL ANGEL REYES-SANCHEZ

Petitioners – Appellees

v.

KEVIN RAYCRAFT, Immigration and Customs Enforcement, Acting Director of Detroit Field Office, Enforcement and Removal Operations

Respondent – Appellant.

On Appeal from the United States District Court for the Eastern District of Michigan, Case No. 25-13073 (Hon. Brandy R. McMillion)

**PETITIONERS – APPELLEES' PRINCIPAL BRIEF**

Michael K.T. Tan (CA284869)
My Khanh Ngo (CA317817)
Oscar Sarabia Roman (CA341385)
American Civil Liberties Union
  Foundation
425 California Street, 7th Floor
San Francisco, CA 94104
(415) 343-0770

Miriam Aukerman (P63165)
Marty Berger (PA 335300)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930

Judy Rabinovitz (NY2079788)
Natalie Behr (NY6159172)
American Civil Liberties Union
   Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2620

Ramis J. Wadood (P85791)
Philip Mayor (P81691)
Bonsitu Kitaba-Gaviglio (P78822)
American Civil Liberties Union
   Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6800

ii

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Petitioners-Appellees make the following disclosure:

1. Is the party a subsidiary or affiliate of a publicly owned corporation?

   Answer: No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

   Answer: No.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... vi

STATEMENT IN SUPPORT OF ORAL ARGUMENT ...................................... viii

INTRODUCTION ......................................................................................1

JURISDICTIONAL STATEMENT ...................................................................4

STATEMENT OF THE ISSUES.......................................................................4

STATEMENT OF THE CASE..........................................................................4

    I.    The History of Detention During Removal Proceedings and the Current Statutory Framework. ....................................................................4

    II.   Judicial and Executive Branch Interpretation and the Government's New Mandatory Detention Policy. ...................................................5

    III.  Factual Background ......................................................................5

    IV.  Procedural History ...................................................................13

STANDARD OF REVIEW .........................................................................15

SUMMARY OF THE ARGUMENT ...............................................................16

ARGUMENT ..........................................................................................20

    I.    The Detention Statutes Provide Petitioners Access to Bond........................20

    II.   Detaining Petitioners Without a Bond Hearing Violates Their Due Process Rights....................................................................21

CONCLUSION........................................................................................23

Certificate of Compliance .......................................................................24

Certificate of Service .............................................................................25

ADDENDA............................................................................................26

Designation of Relevant District Court Documents .............................................26

iv

Key Provisions of Immigration and Nationality Act (INA) ....................................28

Chart of District Court Decisions in the Sixth Circuit.............................................42

# TABLE OF AUTHORITIES

Consistent with Fed. R. App. P. 28(i) and this Court's Order of November 25, 2025, Doc. 12, Petitioners adopt by reference all arguments made in the principal brief of the petitioner in *Lopez-Campos v. Raycraft* (No. 25-1965). For authorities cited in the arguments adopted by reference from *Lopez-Campos*, Petitioners refer to the Table of Authorities in the petitioner's principal brief in *Lopez-Campos*.

**Cases**

*Ammex, Inc. v. United States*, 367 F.3d 530 (6th Cir. 2004) ....................................15

*Barco Mercado v. Francis*, No. 25-cv-6582, --- F. Supp. 3d ----, 2025 WL 3295903 (S.D.N.Y. Nov. 26, 2025)........................................................................3

*Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025) ......................................................................................................................3

*Contreras-Cervantes v. Raycraft*, No. 25-cv-13073, 2025 WL 2952796 (E.D. Mich. Oct. 17, 2025) ................................................................ 5, 13, 14, 15

*Corley v. United States*, 556 U.S. 303 (2009)..........................................................13

*Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254 (6th Cir. 2018) ........................13

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) ..........................................................14

*Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771 (E.D. Mich. 2025).......................13

*Mathews v. Eldridge*, 424 U.S. 319 (1976) .............................................................14

*Roberts v. Sea-land Servs., Inc.*, 566 U.S. 93 (2012) ..............................................13

*Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003).....................................................15

*Util. Air Regul. Grp. v. EPA*, 573 U.S. 302 (2014) ...................................................3

## Statutes

28 U.S.C. § 1291 ..............................................................................................4

28 U.S.C. § 1331 ..............................................................................................4

28 U.S.C. § 2241 ..............................................................................................4

8 U.S.C. § 1101 ..............................................................................................18

8 U.S.C. § 1225 ...........................................................................................2, 18

8 U.S.C. § 1226 ...................................................................................... 2, 14, 16

## Rules

6th Cir. R. 34 ................................................................................................ viii

Fed. R. App. P. 28 ................................................................................ 4, 5, 20, 21

Fed. R. App. P. 34 ......................................................................................... viii

## Other Authorities

Gabriel Kramer, *Northwest Ohio Jail Becomes State's Third ICE Detention Facility*, 91.7 WVXU (Mar. 17, 2025) ................................................................12

Immigration and Customs Enforcement, *Detention Facilities* ...............................12

Lauren Gibbons, *As ICE Detention Center Opens, 'Dangerous Times to Be an Immigrant in Michigan'*, Bridge Michigan (Jun. 24, 2025) ...........................12

Monroe County, *Corrections Division* ................................................................12

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

This case concerns the Executive Branch's new interpretation of the immigration statutes to mandate detention without bond for noncitizens who entered the United States without inspection—a policy that has led to the unlawful detention of countless noncitizens. Hundreds of federal district courts have rejected this policy, leading to multiple appeals by the government.

This Court expedited and assigned four of those appeals, including this one, to the same panel. *See Lopez-Campos v. Raycraft* (No.25-1965); *Pizarro-Reyes v. Raycraft* (No. 25-1982); and *Sanchez Alvarez v. Noem* (No. 25-1969). All raise the same statutory issue: whether a noncitizen arrested in the United States after entering the country without inspection is subject to bond-eligible detention under 8 U.S.C. § 1226 or to mandatory detention under 8 U.S.C. § 1225(b)(2). Three of the cases also raise whether mandatory detention of such noncitizens violates due process.

The Parties agree that oral argument will aid the Court in evaluating these issues. *See* Fed. R. App. P. 34(a)(2); 6th Cir. R. 34(a). To conserve resources, and because the issues are the same, Petitioners in all four appeals request to consolidate oral argument, with 30 minutes per side. Petitioners anticipate allocating their time to one or two attorneys and believe the government should be able to do the same.

**INTRODUCTION**

This case involves this administration's radical decision to reinterpret the Immigration and Nationality Act ("INA") to require the detention, without possibility of bond, of the eight Petitioners here—and millions of other noncitizens residing in the country—solely because they entered the country without inspection. In 1996, when Congress enacted the current detention statutes, the legislature deliberately chose to maintain the longstanding scheme that provided for release on bond of such noncitizens. The Executive promulgated contemporaneous regulations providing these individuals with bond hearings before an immigration judge to determine if they pose a danger or flight risk. And for the last three decades, *everyone*—Congress, the Executive, and the courts—has understood the detention statutes to work in this way. Indeed, five different presidential administrations, both Democratic and Republican (including the first Trump administration), have faithfully applied the statutes in this manner.

But in mid-2025, the government suddenly decided that noncitizens who had entered the country without inspection were instead subject to no-bond detention. In justifying this change, the government relied on a statutory provision that by its terms applies only to noncitizens "seeking admission" to the United States. This new and novel interpretation was not based on any action by Congress; in fact, Congress had amended the detention statutes earlier that year and reaffirmed that noncitizens,

like Petitioners, who entered without inspection are bond eligible.

Petitioners are eight of the many noncitizens the government has imprisoned based on this sudden about-face. They are long-term residents of the United States who have lived here for as long as a quarter century, in some cases since infancy. Many have U.S. citizen spouses and children, and all are deeply integrated into their communities. Each Petitioner is eligible for immigration relief. The types of relief they are seeking vary, but include cancellation of removal, which would make them lawful permanent residents; Deferred Action for Childhood Arrivals (DACA) which defers removal of people who came to the United States as children; asylum which provides lawful status, as well as a path towards lawful permanent residency; Temporary Protected Status (TPS), which provides temporary lawful status; and withholding of removal, which bars removal to the country of persecution.

Prior to the government's adoption of the contested policy in July 2025, Petitioners were entitled to a bond hearing under the detention statute, 8 U.S.C. § 1226. But under its reinterpretation of the INA, the government now claims Petitioners are subject to mandatory detention under 8 U.S.C. § 1225(b)(2), which requires the detention without bond of noncitizens "seeking admission" to the United States. The government does not argue that Petitioners are a flight risk or danger to the community. Rather, its *sole* justification is that its new and novel reinterpretation of the law categorically requires their detention.

"When an agency claims to discover in a long-extant statute an unheralded power . . . [the courts] typically greet its announcement with a measure of skepticism." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014). This is especially true here, given the breathtaking consequences of the government's position. If accepted, the government's new interpretation would require the detention of *millions* of people who, like Petitioners, are alleged to have entered the country without inspection—regardless of whether they present a danger or flight risk. That would be the largest expansion of mandatory detention in U.S. history. Yet, for nearly three decades, this purported statutory command escaped the notice of Congress and five different administrations.

Hundreds of judges in district courts across the country—including at least 28 in this Circuit—have rejected the new detention policy as irreconcilable with the INA's text, structure, and history. Decision Chart, Addendum 3 (listing 215 favorable decisions in this Circuit); *Barco Mercado v. Francis*, No. 25-cv-6582, --- F. Supp. 3d ----, 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025) (listing 350 decisions rejecting government's position). Just last month, the Seventh Circuit preliminarily concluded the same.[1] This Court should reject the government's

---

[1] *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–1063 (7th Cir. 2025) (order granting and denying stay motion in part, and finding that the government was unlikely to establish that noncitizens who entered without inspection are subject to mandatory detention under § 1225(b)(2)).

3

attempt to rewrite the INA and affirm the district court's judgment.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 2241. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      8 U.S.C. § 1226 is the default detention statute that governs detention during removal proceedings of noncitizens arrested in the United States. It generally provides for noncitizens' release on bond. In contrast, 8 U.S.C. § 1225(b)(2) imposes mandatory, no-bond detention on noncitizens "seeking admission" to the United States. Are Petitioners—noncitizens who were arrested and placed in removal proceedings, and charged with entering the country without inspection years ago — subject to detention under § 1226 or § 1225(b)(2)?

2.      If Petitioners' detention is governed by § 1225(b)(2), does their mandatory detention without a bond hearing violate due process?

## STATEMENT OF THE CASE

**I.      The History of Detention During Removal Proceedings and the Current Statutory Framework.**

Pursuant to Fed. R. App. P. 28(i) and this Court's Order of November 25, 2025, Doc. 12, Petitioners join in the brief filed by the petitioner in *Lopez-Campos v. Raycraft* (No. 25-1965) and adopt all arguments made there by reference.

4

## II.    Judicial and Executive Branch Interpretation and the Government's New Mandatory Detention Policy.

Pursuant to Fed. R. App. P. 28(i) and this Court's Order of November 25, 2025, Doc. 12, Petitioners join in the brief filed by the petitioner in *Lopez-Campos v. Raycraft* (No. 25-1965) and adopt all arguments made there by reference.

## III.    Factual Background

Petitioners-Appellees are eight long-time residents of the United States who came to this country between three and 25 years ago and were as young as 11 months old when they arrived. All have lived here ever since but were taken into immigration custody between June and September 2025, either after being arrested by immigration authorities or after a routine traffic stop by local police, who then contacted immigration authorities. The government detained them without the possibility of bond under its new policy. The Petitioners filed a joint habeas petition on September 29, 2025, R. 1, which the district court granted on October 17, 2025. *Contreras-Cervantes v. Raycraft*, No. 25-cv-13073, 2025 WL 2952796 (E.D. Mich. Oct. 17, 2025).

**Jose Daniel Contreras-Cervantes**, a resident of Romeo, Michigan, came to the United States from Mexico in 2006 when he was 14 years old. He has lived in the United States continuously ever since—almost two decades. He is married to a U.S. citizen, and together they have had three U.S. citizen children, ages 1, 8 and 9. In 2024, he was diagnosed with chronic myeloid leukemia, a rare and life-

5

threatening cancer of the bone marrow that requires daily oral chemotherapy, ongoing monitoring by an oncologist and ophthalmologist, and continuity of care. He has deep community ties, including active involvement in the Saint Clement of Rome Church in Romeo. He has no criminal history aside from minor traffic offenses. Petition, R. 1, PageID #12–14. Petition, R. 1, PageID #6, 10–14.

On August 5, 2025, Mr. Contreras-Cervantes was pulled over by the Macomb County Sheriffs' Office for allegedly driving 6-10 miles over the speed limit. The local police turned him over to immigration authorities. He was shuttled between various immigration detention facilities, went weeks without any medical care for his leukemia, and was eventually transferred to the North Lake Processing Center in Baldwin, Michigan, where he received only limited medical care. The disruption in his treatment during detention—including the lack of critically necessary medication— and the ongoing absence of his regular care team put him at grave risk of severe complications, including permanent vision damage, uncontrolled white blood cell proliferation, infection, and death. Petition, R. 1, PageID #11–12. Mr. Contreras-Cervantes is seeking cancellation of removal and adjustment of status. Petition, R. 1, PageID #14; Anderson Decl., R. 9-2, PageID #158.

**Fredy De Los Angeles-Flores**, a resident of Pontiac, Michigan, came to the United States from Mexico in 2010. He is the sole caregiver of his 13-year-old U.S. citizen son. On June 27, 2025, he was arrested at a gas station by immigration

6

authorities who were looking for someone else. ICE then detained him at the Monroe County Jail in Monroe, Michigan. Petition, R. 1, PageID #6–7, 14–15.

Until his detention, Mr. De Los Angeles-Flores had provided a safe and stable home environment for his son and had been deeply involved in his son's education and the school community. His detention disrupted his ability to care for his son and was so traumatic for the child that the child's social worker expressed concern about the child's stability. Mr. De Los Angeles-Flores owns his home and has no criminal history aside from minor traffic offenses. Petition, R. 1, PageID #16. He is seeking cancellation of removal and adjustment of status. Mitchell Decl., R. 9-3, PageID #163.

**Mariela Virginia Ocando-Leon**, a resident of White Lake, Michigan, came to the United States from Venezuela in 2021. She works as a painter. On July 15, 2025, she was a passenger in a vehicle that was pulled over by police in Auburn Hills, Michigan. Local police turned her over to immigration authorities, who subsequently detained her at the Corrections Center of Northwest Ohio. Petition, R. 1, PageID #7, 17.

Ms. Ocando-Leon had temporary protected status (TPS) and is also seeking asylum. Anderson Decl., R. 9-4, PageID #167–169. She has deep ties in Michigan, including a U.S. citizen sister who serves as her sponsor. She does not have any criminal history aside from minor traffic offenses. Petition, R. 1, PageID #18. On

7

October 1, 2025, while the habeas petition was pending with the district court, Ms. Ocando-Leon was released as a result of a district court order in a class action challenging the government's stripping of TPS from Venezuelans. That order was subsequently stayed by the Supreme Court on October 3, 2025. Ms. Ocando-Leon—demonstrating that she is not a flight risk—reported to her ICE check-in on October 8, 2025, where she was redetained by ICE. *See* Petitioners' Reply Br., R. 13, PageID #230–231; Anderson Decl., R. 9-4, PageID #168–169. ICE continued to detain her until she was again released on October 21, 2025, as a result of the district court's decision in this case. Supplemental Status Rept., R. 18, PageID #271–272.

**Luis Felipe Jarquin-Jarquin**, a resident of Ypsilanti, Michigan, came to the United States from Nicaragua in 2022. He works as a roofer and is involved in the St. Francis of Assisi Catholic Church in Ann Arbor, Michigan, where he serves as a sacristan. He does not have a criminal record. Petition, R. 1, PageID #7, 18–20.

On August 6, 2025, Mr. Jarquin-Jarquin was pulled over by ICE while driving a roofing company vehicle. Although the ICE officers said they were looking for someone else, and although Mr. Jarquin-Jarquin had a valid driver's license, vehicle registration, and work authorization, the ICE officers arrested him. He was detained at the Monroe County Jail. Petition, R. 1, PageID #7, 17–19.  Mr. Jarquin-Jarquin has applied for asylum and withholding of removal. Hughley Decl., R. 9-5, PageID #172.

8

**Debbie Vasquez-Cruz**, a resident of Detroit, Michigan, came to the United States from Mexico in 2016. She is married and the mother of a six-year-old U.S. citizen daughter with a disability, who depends on her daily for stability, support, and specialized attention. On August 1, 2025, Ms. Vasquez-Cruz and her daughter were en route to the beach to celebrate a friend's birthday when the driver of the vehicle mistakenly turned into Canada. Immigration authorities detained both Ms. Vasquez-Cruz and her daughter before eventually separating them and sending Ms. Vasquez-Cruz to the Corrections Center of Northwest Ohio. Ms. Vasquez-Cruz and her daughter had never before been apart for any meaningful length of time. Petition, R. 1, PageID #7–8, 20–22.

Ms. Vasquez-Cruz has applied for asylum and withholding of removal. McClure Decl., R. 9-6, PageID #178. She does not have any criminal history. Her detention was especially hard on her young daughter, who relies on her for daily care and emotional support. Petition, R. 1, PageID #21–22.

**Jairo Manuel Godoy-Perez**, a resident of Milford, Michigan, came to the United States from Guatemala in 2018 at the age of 17. On July 31, 2025, he was pulled over while driving and was detained by ICE officers. He was held in the North Lake Processing Center in Baldwin, Michigan. Petition, R. 1, PageID #8, 22–23.

Mr. Godoy-Perez was a victim of a felonious assault and has been participating in the Oakland County Prosecutor's Office Crime Victims Program. Due to

9

his detention, he has missed three court hearings where he was expected to serve as a witness in the related proceedings. He has cooperated with law enforcement as a witness and crime victim and does not have any criminal history. *Id.*, PageID #22–23. He is seeking asylum. Anderson Decl., R. 9-7, PageID #183.

**Marifer Diaz-Alcantar** was 11 months old when she brought to the United States from Mexico in 2003. She graduated from Western International High School and lives in Detroit, Michigan. On July 30, 2025, Ms. Diaz-Alcantar was stopped by Clay Township police for a routine traffic stop. Although she provided her documents, the police contacted immigration authorities, who detained her. She was shuttled between several detention locations and then transferred to the Corrections Center of Northwest Ohio. Petition, R. 1, PageID #8, 24.

Ms. Diaz-Alcantar has a pending application for Deferred Action for Childhood Arrivals (DACA), a program that defers removal for individuals who came to the United States as children. Ms. Diaz-Alcantar does not speak Spanish fluently, has no ties or support system outside this country, and has no criminal history. Petition, R. 1, PageID #24–25.

**Miguel Angel Reyes-Sanchez** came to the U.S. from Mexico as an infant in 2000 and has lived here for a quarter century. He resides in Detroit, Michigan with his U.S. citizen wife and their two U.S. citizen children—a baby and a four-year-old—all of whom rely on him for emotional and financial support. On September 5,

10

2025, while driving to work, he was pulled over by an unmarked ICE vehicle. Although he presented his driver's license and valid work permit, he was taken into custody and detained at the North Lake Processing Center in Baldwin, Michigan. Petition, R. 1, PageID #9, 26–27.

Mr. Reyes-Sanchez's wife has filed an I-130 Alien Relative Petition for him, and he has also applied for cancellation of removal, adjustment of status, asylum, and withholding of removal. Hackett Decl., R. 9-9, PageID #191. He has no criminal history other than minor traffic offenses. Petition, R. 1, PageID #27.

***

The Department of Homeland Security ("DHS") placed each of the Petitioners in removal proceedings pursuant to 8 U.S.C. § 1229a, charging them with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) (presence without admission or parole) and, in some cases, also under § 1182(a)(7)(A)(i)(I) (not possessing valid immigration documents). Petition, R. 1, PageID #10–27. Each of the Petitioners either sought a bond hearing, which an immigration judge denied on the ground that the Petitioner was subject to mandatory detention under § 1225(b)(2), or was advised by immigration counsel that seeking a bond hearing would be futile because the judges in the immigration court with jurisdiction over their case were deeming people who allegedly entered without inspection subject to mandatory detention under 8 U.S.C. § 1225(b)(2). Petition, R. 1, PageID #10–27.

11

All of the Petitioners were detained by ICE in facilities that either are currently used or were previously used to incarcerate people convicted of crimes. Those facilities are the North Lake Processing Center in Baldwin, Michigan, a former federal prison which was recently reopened as a for-profit immigration detention facility[2]; the Monroe County Jail in Monroe, Michigan, which primarily houses both people convicted of or charged with crimes but also contracts with the federal government to house immigration detainees[3]; and the Corrections Center of Northwest Ohio in Stryker, Ohio, which does the same.[4] Other immigration detention facilities within the jurisdiction of ICE's Detroit Field Office likewise exist primarily to incarcerate people convicted of or charged with crimes, but also contract with ICE.[5]

---

[2] Lauren Gibbons, *As ICE Detention Center Opens, 'Dangerous Times to Be an Immigrant in Michigan'*, Bridge Michigan (Jun. 24, 2025), https://perma.cc/NP7F-5HZB.

[3] Monroe County, *Corrections Division*, https://perma.cc/85XM-M22F (last visited Jan. 6, 2026).

[4] Gabriel Kramer, *Northwest Ohio Jail Becomes State's Third ICE Detention Facility*, 91.7 WVXU (Mar. 17, 2025), https://perma.cc/66MH-7GK4.

[5] Those other facilities are the Butler County Sheriff's Office (Hamilton, Ohio), Calhoun County Correctional Center (Battle Creek, Michigan), Chippewa County Correctional Facility (Sault Ste. Marie, Michigan), Geauga County Safety Center (Chardon, Ohio), Mahoning County Justice Center (Youngstown, Ohio), Northeast Ohio Correctional Center (Youngtown, Ohio), Seneca County Jail (Tiffin, Ohio), and the St. Clair County Jail (Port Huron, Michigan). *See* U.S. Immigration and Customs Enforcement, *Detention Facilities*, https://perma.cc/Y7M9-GSGJ (last visited Jan. 6, 2026).

## IV.   Procedural History

On September 29, 2025, Petitioners filed a joint habeas petition under 28 U.S.C. § 2241, seeking release or, alternatively, a bond hearing under § 1226(a). Petition, R. 1, PageID #40. On October 17, 2025, the district court granted relief, holding that Petitioners' detention is governed by § 1226(a) and that they are entitled to a bond hearing.[6] *Contreras-Cervantes*, 2025 WL 2952796.

The court, which had previously decided *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771 (E.D. Mich. 2025), built on its analysis from that earlier decision. The court held that "[t]he plain language of the statutes [§§ 1225, 1226], the overall structure, the intent of Congress, and over 30 years of agency action make clear that section 1226(a) is the appropriate statutory framework" here. *Contreras-Cervantes,* 2025 WL 2952796, at * 6. The court emphasized that "'the words of a statute must be read in their context and with a view to their place in the overall statutory scheme,'" *id.* (quoting *Roberts v. Sea-land Servs., Inc.*, 566 U.S. 93, 101 (2012)), and so as to give effect to all of a statute's provisions, *id.* (citing *Corley v. United States*, 556 U.S. 303, 314 (2009)). Looking to the titles and structure of the two provisions, the court found that § 1225 governs "inspection" of noncitizens, "which

---

[6] The district court also rejected the government's administrative exhaustion argument. *Contreras-Cervantes*, 2025 WL 2952796, at * 4–6. Respondent has forfeited this argument by not raising it on appeal. *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018).

usually occurs at the border, when they are seeking lawful entry into this country." *Id.* It was not logical, the court concluded, to find that Petitioners were "seeking admission" within the meaning of §1225(b)(2)(A) after having resided here for years. *Id.* By contrast, §1226(a)—which "deals[]s with 'apprehension and detention of aliens,' upon 'a warrant . . . pending a decision on whether the [noncitizen] is to be removed from the United States'"—is clearly applicable. *Id.* (citing 8 U.S.C. § 1226(a)). The court further found that the government's interpretation could not be squared with the Laken Riley Act, which amended § 1226(c) to add a targeted mandatory-detention provision for certain inadmissible noncitizens, a provision which would have been unnecessary if those noncitizens were already subject to mandatory detention under § 1225(b)(2)(A). *Id.* at *8. That "express exception" to § 1226(a)'s discretionary detention framework "implies that there are no *other* circumstances under which detention is mandated for noncitizens . . . who are subject to Section 1226(a)." *Id.* (citing *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) (cleaned up)).

On Petitioners' due process claim, the court found all three of the factors from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), weigh in Petitioners' favor: their liberty is at stake; the risk of erroneous deprivation is high absent an individualized determination of flight risk and dangerousness; and, "given the history and characteristics of these Petitioners, the Government has not and likely cannot show

14

that it has a significant interest in any of the Petitioners' continued detention." *Contreras-Cervantes*, 2025 WL 2952796, at \*9.

The district court ordered the government to provide Petitioners with bond hearings under § 1226(a) within seven days or release them. *Id.* at \*10. On October 21, 2025, four days after the district court's order, the government released all eight Petitioners. Status Rept., R. 15; Supplemental Status Rept., R. 18. They have since been living in the community, supporting their families, and receiving needed medical care while pursuing immigration relief so that they can remain with their families in the country they call home.

Respondent appealed (R. 16), and this Court expedited and assigned this case to the same panel as three other pending appeals raising the same question: *Lopez-Campos v. Raycraft* (No. 25-1965), *Sanchez Alvarez v. Noem* (No. 25-1969), and *Pizarro-Reyes v. Raycraft* (No. 25-1982).

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's decision regarding legal issues in a habeas proceeding. *Roman v. Ashcroft*, 340 F.3d 314, 318 (6th Cir. 2003). Statutory and constitutional interpretation issues are questions of law that this Court also reviews *de novo*. *Ammex, Inc. v. United States*, 367 F.3d 530, 533 (6th Cir. 2004).

15

## SUMMARY OF THE ARGUMENT

Section 1226 is the INA's default detention rule for noncitizens living in the United States. It applies broadly to noncitizens placed into § 1229a removal proceedings after apprehension in the interior, including those who entered without inspection and are therefore charged as inadmissible. Congress made this clear by drafting § 1226 as a general authorization to detain a noncitizen "pending a decision on whether the alien is to be removed," 8 U.S.C. § 1226(a)—as the term "removed" encompasses individuals who are inadmissible. In contrast, the pre-IIRIRA statute providing for bond-eligible detention of those apprehended inside the United States was limited to noncitizens "pending a determination of deportability." The government's position that § 1226 only applies to those who have been previously admitted ignores this change. *See Lopez-Campos v. Raycraft* (No. 25-1965), Pet. Br., Section I.A.1.

The text of § 1226(c) dispels any remaining doubt that Congress intended § 1226 to govern the detention of inadmissible noncitizens like Petitioners. That subsection expressly carves out an exception to § 1226(a)—which provides for release on bond—for noncitizens charged with inadmissibility (or deportability) on certain criminal or terrorism-related grounds, for whom detention is mandatory. By doing so, Congress clearly understood and intended that allegedly inadmissible noncitizens who are *not* charged on criminal or terrorism-related grounds are eligible

16

for release on bond under § 1226(a). Otherwise, there would have been no need to carve them out from that subsection. *See Lopez-Campos v. Raycraft* (No. 25-1965), Pet. Br., Section I.A.2.

Congress's recent enactment of the Laken Riley Act demonstrates even more clearly that § 1226 applies to Petitioners. By specifically expanding the scope of § 1226(c) mandatory detention to include a new category of noncitizens who are inadmissible because they entered without inspection and who committed (or are accused of) certain criminal offenses, the legislation was intentionally taking that subset of inadmissible noncitizens out of § 1226(a) and thereby necessarily recognizing that such inadmissible noncitizens are covered by § 1226(a). That understanding refutes the government's belated effort to reinterpret § 1226 to the contrary. *See Lopez-Campos v. Raycraft* (No. 25-1965), Pet. Br., Section I.A.2.

Indeed, the Executive Branch's own contemporaneously-adopted regulations and three decades of unbroken practice underscore that the INA affords noncitizens who are present in the United States access to bond, even if they entered the country without inspection. *See Lopez-Campos v. Raycraft* (No. 25-1965), Pet. Br., Section I.A.3.

By contrast, § 1225(b)(2) does *not* apply to people like the Petitioners. Section 1225(b)(2)'s detention mandate applies only to an "applicant for admission" who is "*seeking admission.*" *See id*. The INA deems noncitizens who enter the country

17

without inspection "applicants for admission" based on their being "present in the United States" without having "been admitted." 8 U.S.C. § 1225(a)(1). But even if Petitioners are considered an "applicant for admission" under the statutory definition, that does not mean they are "seeking admission." That language—specifically chosen by Congress—reflects an activity, not a status. Consistent with the INA's definition of "admission," the term "seeking admission" means a present tense effort to obtain the "lawful entry into the United States after inspection and authorization." 8 U.S.C. § 1101(a)(13). A noncitizen who entered without inspection and has been living in the United States is clearly not engaging in such an effort. Moreover, the government's argument that all "applicants for admission" are necessarily "seeking admission" to the United States effectively writes "seeking admission" out of the statute, rendering it superfluous. *See Lopez-Campos v. Raycraft* (No. 25-1965), Pet. Br., Sections I.B.1–2.

The government argues that Petitioners' pursuit of relief from removal constitutes "seeking admission." But that position is foreclosed by Supreme Court precedent, which has recognized that such relief affords "lawful status" and not an "admission." Nor can it be squared with the fact that § 1225(b)(2) does not encompass seeking relief before an immigration judge, which many noncitizens do. And the government's position would have the absurd result of rendering noncitizens ineligible for bond when they seek relief from removal, but eligible for

18

bond if they choose to voluntarily depart the United States. *See Lopez-Campos v. Raycraft* (No. 25-1965), Pet. Br., Section I.B.4.

The text of IIRIRA and the staggering ramifications of the government's position further demonstrate that Congress could not have intended to mandate the detention policy. When Congress in IIRIRA expanded mandatory detention through § 1226(c) for noncitizens charged with removal based on criminal conduct, it was acutely sensitive to resource constraints and permitted the agency to delay implementation and increase its detention capacity to hold the estimated 45,000 noncitizens that § 1226(c) would cover each year. But if the government were correct about the scope of § 1225(b)(2), that would mean the same Congress enacted the provision to silently require the no-bond detention of an estimated population of two million people at that time—and closer to six million today—without giving any consideration to existing bedspace. *See Lopez-Campos v. Raycraft* (No. 25-1965), Pet. Br., Section I.B.3.

Finally, if the statute mandated what the government proposes, it would raise serious constitutional issues that the Court need not and should not decide. Under longstanding precedent, noncitizens residing in the country are entitled to due process when deprived of their liberty. Given this precedent, a statute that requires the detention of every noncitizen in the country who enters without inspection, without any hearing to determine if they pose a danger or flight risk, would at a

19

minimum be constitutionally suspect. *See Lopez-Campos v. Raycraft* (No. 25-1965), Pet. Br., Section 1.C.1.

Whenever a statute can be fairly construed to avoid a serious constitutional problem, the Court must do so. Because § 1226(a) can be fairly construed as authorizing release on bond for noncitizens who entered the country without inspection, and because § 1225(b)(2) can be fairly construed as mandating the detention only of noncitizens who are "seeking admission," this Court should hold that § 1226(a) governs Petitioners' detention and entitles them to a bond hearing. *See Lopez-Campos v. Raycraft* (No. 25-1965), Pet. Br., Section I.C.2. However, were the Court to decide that it cannot construe the statute in this way, it should find that Petitioners' detention without a bond hearing violates due process. *See Lopez-Campos v. Raycraft* (No. 25-1965), Pet. Br., Section II.

In short, the district court correctly held that Petitioners' detention is governed by § 1226, not § 1225(b)(2), and that they are entitled to a bond hearing under the statute. In the alternative, Petitioners are entitled to a bond hearing under the Due Process Clause. This Court should affirm the grant of habeas relief.

## ARGUMENT

I.     **The Detention Statutes Provide Petitioners Access to Bond.**

Pursuant to Fed. R. App. P. 28(i) and this Court's Order of November 25, 2025, Doc. 12, Petitioners join in the brief filed by the petitioner in *Lopez-Campos*

20

*v. Raycraft* (No. 25-1965) and adopt all arguments made there by reference.

## II.    Detaining Petitioners Without a Bond Hearing Violates Their Due Process Rights.

Pursuant to Fed. R. App. P. 28(i) and this Court's Order of November 25, 2025, Doc. 12, Petitioners join in the brief filed by the petitioner in *Lopez-Campos v. Raycraft* (No. 25-1965) and adopt all arguments made there by reference.

Petitioners further note that the facts of their cases highlight the weight of their liberty interest, the risk of erroneous deprivation without a bond hearing, and the lack of any government interest in detaining them. For example, Mr. Contreras-Cervantes, who came to the United States at the age of 14, has lived here almost two decades, has a U.S. citizen wife and three U.S. citizen children, and suffers from a life-threatening form of leukemia, for which he did not receive adequate care while detained. Petition, R. 1, PageID #10–14. Mr. Reyes-Sanchez, who came to the United States as a baby, has been living here for a quarter century and has a U.S. citizen wife and two U.S. citizen children. *Id.*, PageID #26. Similarly, 23-year-old Ms. Diaz-Alcantar came to the United States at 11 months old. *Id.*, PageID #24. None of the Petitioners have criminal history, other than for traffic infractions. *Id.*, PageID #14–27.

Detention harms not only the Petitioners themselves, but also their families. For example, the disabled six-year-old U.S. citizen daughter of Ms. Vasquez-Cruz was separated from her mother for the first time ever and was deprived of the

specialized care she needs. *Id.*, PageID #20–22. Mr. De Los Angeles-Flores's detention was traumatic for his 13-year-old son. *Id.*, PageID #16.

Detention also harms society at large, depriving employers of needed workers (e.g., Mr. Jarquin-Jarquin's work as a roofer, Ms. Ocando-Leon's work as a painter, *id.*, PageID #17–18) and communities of their involvement (e.g., Mr. Contreras-Cervantes's and Mr. Jarquin-Jarquin's engagement in their churches, *id.*, PageID #14, 20). And their detention undermines public safety: because Mr. Godoy-Perez was detained, he was unable to attend court appearances in a criminal case in which he was a witness. *Id.*, PageID #22.

The government has never alleged—nor could it—that any of the Petitioners present a flight risk or danger, much less provided any evidence to suggest as much. To the contrary, Petitioners are long-term residents of the United States who have close family and community ties, including U.S. citizen spouses and children, and who do not have criminal history other than minor traffic offenses. Indeed, in each Petitioner's case, after the district court's order, the government chose to simply release them rather than hold a bond hearing, demonstrating that even the government did not consider them to be a flight risk or danger to the public. Status Rept., R. 15; Supplemental Status Rept., R. 18.

**CONCLUSION**

The Court should affirm the district court's order granting the writ of habeas corpus.

Respectfully submitted,

<table>
<tr><td>

Michael K.T. Tan (CA284869)
My Khanh Ngo (CA317817)
Oscar Sarabia Roman (CA341385)
American Civil Liberties Union
  Foundation
425 California Street, 7th Floor
San Francisco, CA 94104
(415) 343-0770
m.tan@aclu.org
mngo@aclu.org
osarabia@aclu.org

Judy Rabinovitz (NY2079788)
Natalie Behr (NY6159172)
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2620
jrabinovitz@aclu.org
irp_nbehr@aclu.org

</td><td>

s/ Miriam Aukerman (P63165)
Marty Berger (PA 335300)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
mberger@aclumich.org

Ramis J. Wadood (P85791)
Philip Mayor (P81691)
Bonsitu Kitaba-Gaviglio (P78822)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6800
rwadood@aclumich.org
pmayor@aclumich.org
bkitaba@aclumich.org

</td></tr>
</table>

*Attorneys for Petitioners-Appellees*

23

24

## Certificate of Compliance

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the word counting feature of counsel's word processing programs shows that this brief contains 5,190 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Sixth Circuit Rule 32(b)(1).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(A)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*s/ Miriam J. Aukerman*
Miriam J. Aukerman (P63165)
Attorney for Petitioners-Appellees

**Certificate of Service**

This brief will be served on January 8, 2026, on all counsel of record via the

Court's ECF system.

*s/ Miriam J. Aukerman*
Miriam J. Aukerman (P63165)
Attorney for Petitioners-Appellees

25

**ADDENDA**

**Addendum 1**

**Designation of Relevant District Court Documents**

| Description of the Document | Date | District Court Record Entry Number | Page ID Numbers |
|---|---|---|---|
| Petition for Writ of Habeas Corpus | 09/29/2025 | 1 | 1-41 |
| Index of Exhibits | 09/29/2025 | 1-1 | 42-43 |
| Exhibit 1 - Contreras-Cervantes Bond Decision | 09/29/2025 | 1-2 | 44-46 |
| Exhibit 2 - De Los Angeles-Flores Bond Decision | 09/29/2025 | 1-3 | 47-49 |
| Exhibit 3 - Jarquin-Jarquin Bond Decision | 09/29/2025 | 1-4 | 50-52 |
| Exhibit 4 - Vasquez-Cruz Bond Decision | 09/29/2025 | 1-5 | 53-55 |
| Petitioners' Brief in Support of Petition for Writ of Habeas Corpus | 09/29/2025 | 2 | 56-88 |
| Exhibit A – Contreras-Cervantes Notice to Appear | 09/29/2025 | 2-1 | 89-94 |
| Response to Petition | 10/03/2025 | 9 | 115-153 |
| Index of Exhibits | 10/03/2025 | 9-1 | 154 |
| Exhibit 1 – Declaration regarding petitioner Jose Daniel Contreras-Cervantes | 10/03/2025 | 9-2 | 155-159 |
| Exhibit 2 – Declaration regarding petitioner Fredy De Los Angeles-Flores | 10/03/2025 | 9-3 | 160-164 |
| Exhibit 3 – Declaration regarding petitioner Mariela Virginia Ocando-Leon | 10/03/2025 | 9-4 | 165-169 |
| Exhibit 4 – Declaration regarding petitioner Luis Felipe Jarquin-Jarquin | 10/03/2025 | 9-5 | 170-174 |
| Exhibit 5 – Declaration regarding petitioner Debbie Vasquez-Cruz | 10/03/2025 | 9-6 | 175-179 |
| Exhibit 6 – Declaration regarding petitioner Jairo Manuel Godoy-Perez | 10/03/2025 | 9-7 | 180-184 |
| Exhibit 7 – Declaration regarding | 10/03/2025 | 9-8 | 185- |

26

| | | | |
|---|---|---|---|
| petitioner Marifer Diaz-Alcantar | | | 188 |
| Exhibit 8 – Declaration regarding petitioner Miguel Angel Reyes-Sanchez | 10/03/2025 | 9-9 | 189-192 |
| Exhibit 9 – Form EOIR-42B – App. for Cancellation of Removal and Adjustment of Status | 10/03/2025 | 9-10 | 193-205 |
| Exhibit 10 – BIA Decision | 10/03/2025 | 9-11 | 206-208 |
| Order Regarding Reassignment of Companion Case | 10/08/2025 | 12 | 217 |
| Petitioners' Reply Brief in Support of Petition for Writ of Habeas Corpus | 10/08/2025 | 13 | 218-233 |
| Exhibit A - Updated List of Cases Applying § 1226(a) Under Similar Circumstances | 10/08/2025 | 13-1 | 234-237 |
| Opinion and Order Granting Writ of Habeas Corpus | 10/17/2025 | 14 | 238-264 |
| Status Report | 10/24/2025 | 15 | 265-266 |
| Notice of Appeal | 10/24/2025 | 16 | 268-269 |
| Supplemental Status Report | 10/27/2025 | 18 | 271-273 |

27

**Addendum 2**

**Key Provisions of Immigration and Nationality Act (INA)**

<u>*Note*</u>: *The text in red below reflects the amendments made by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025).*

**8 U.S.C. § 1226 - Apprehension and detention of aliens**

**(a) Arrest, detention, and release**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

> **(1)** may continue to detain the arrested alien; and

> **(2)** may release the alien on—

>> **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

>> **(B)** conditional parole; but

> **(3)** may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

**(b) Revocation of bond or parole**

The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien.

**(c) Detention of criminal aliens**

> **(1) Custody**

> The Attorney General shall take into custody any alien who—

28

**(A)** is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

**(B)** is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

**(C)** is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, ~~or~~

**(D)** is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, or

**(E)**

> **(i)** is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
>
> **(ii)** is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

**(2) Definition**

For purposes of paragraph (1)(E), the terms "burglary", "theft", "larceny", "shoplifting", "assault of a law enforcement officer", and "serious bodily injury" have the meanings given such terms in the jurisdiction in which the acts occurred.

**(3) Detainer**

The Secretary of Homeland Security shall issue a detainer for an alien described in paragraph (1)(E) and, if the alien is not otherwise detained by

29

the Federal, State, or local officials, shall effectively and expeditiously take custody of the alien.

**(24) Release**

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

**(d) Identification of criminal aliens**

**(1)** The Attorney General shall devise and implement a system—

**(A)** to make available, daily (on a 24-hour basis), to Federal, State, and local authorities the investigative resources of the Service to determine whether individuals arrested by such authorities for aggravated felonies are aliens;

**(B)** to designate and train officers and employees of the Service to serve as a liaison to Federal, State, and local law enforcement and correctional agencies and courts with respect to the arrest, conviction, and release of any alien charged with an aggravated felony; and

**(C)** which uses computer resources to maintain a current record of aliens who have been convicted of an aggravated felony, and indicates those who have been removed.

**(2)** The record under paragraph (1)(C) shall be made available—

**(A)** to inspectors at ports of entry and to border patrol agents at sector headquarters for purposes of immediate identification of any alien

30

who was previously ordered removed and is seeking to reenter the United States, and

**(B)** to officials of the Department of State for use in its automated visa lookout system.

**(3)** Upon the request of the governor or chief executive officer of any State, the Service shall provide assistance to State courts in the identification of aliens unlawfully present in the United States pending criminal prosecution.

**(e) Judicial review**

The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention ~~or release~~ of any alien or the ~~grant,~~ revocation, or denial of bond or parole.

**(f) Enforcement by attorney general of a State**

The attorney general of a State, or other authorized State officer, alleging an action or decision by the Attorney General or Secretary of Homeland Security under this section to release any alien or grant bond or parole to any alien that harms such State or its residents shall have standing to bring an action against the Attorney General or Secretary of Homeland Security on behalf of such State or the residents of such State in an appropriate district court of the United States to obtain appropriate injunctive relief. The court shall advance on the docket and expedite the disposition of a civil action filed under this subsection to the greatest extent practicable. For purposes of this subsection, a State or its residents shall be considered to have been harmed if the State or its residents experience harm, including financial harm in excess of $100.

31

**8 U.S.C. § 1225 - Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing**

**(a) Inspection**

**(1)** Aliens treated as applicants for admission

An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

**(2)** Stowaways

An arriving alien who is a stowaway is not eligible to apply for admission or to be admitted and shall be ordered removed upon inspection by an immigration officer. Upon such inspection if the alien indicates an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview under subsection (b)(1)(B). A stowaway may apply for asylum only if the stowaway is found to have a credible fear of persecution under subsection (b)(1)(B). In no case may a stowaway be considered an applicant for admission or eligible for a hearing under section 1229a of this title.

**(3)** Inspection

All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers.

**(4)** Withdrawal of application for admission

An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States.

**(5)** Statements

An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States, including the applicant's intended length of stay and whether the applicant intends to remain permanently or become a United States citizen, and whether the applicant is inadmissible.

**(b) Inspection of applicants for admission**

**(1)** Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled

**(A)** Screening

**(i)** In general

If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

**(ii)** Claims for asylum

If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title and the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer under subparagraph (B).

33

**(iii)** Application to certain other aliens

**(I)** In general

The Attorney General may apply clauses (i) and (ii) of this subparagraph to any or all aliens described in subclause (II) as designated by the Attorney General. Such designation shall be in the sole and unreviewable discretion of the Attorney General and may be modified at any time.

**(II)** Aliens described

An alien described in this clause is an alien who is not described in subparagraph (F), who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

**(B)** Asylum interviews

**(i)** Conduct by asylum officers

An asylum officer shall conduct interviews of aliens referred under subparagraph (A)(ii), either at a port of entry or at such other place designated by the Attorney General.

**(ii)** Referral of certain aliens

If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien shall be detained for further consideration of the application for asylum.

34

**(iii)** Removal without further review if no credible fear of persecution

**(I)** In general

Subject to subclause (III), if the officer determines that an alien does not have a credible fear of persecution, the officer shall order the alien removed from the United States without further hearing or review.

**(II)** Record of determination

The officer shall prepare a written record of a determination under subclause (I). Such record shall include a summary of the material facts as stated by the applicant, such additional facts (if any) relied upon by the officer, and the officer's analysis of why, in the light of such facts, the alien has not established a credible fear of persecution. A copy of the officer's interview notes shall be attached to the written summary.

**(III)** Review of determination

The Attorney General shall provide by regulation and upon the alien's request for prompt review by an immigration judge of a determination under subclause (I) that the alien does not have a credible fear of persecution. Such review shall include an opportunity for the alien to be heard and questioned by the immigration judge, either in person or by telephonic or video connection. Review shall be concluded as expeditiously as possible, to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination under subclause (I).

**(IV)** Mandatory detention

35

Any alien subject to the procedures under this clause
shall be detained pending a final determination
of credible fear of persecution and, if found not to have
such a fear, until removed.

**(iv)** Information about interviews

The Attorney General shall provide information concerning the
asylum interview described in this subparagraph to aliens who
may be eligible. An alien who is eligible for such interview may
consult with a person or persons of the alien's choosing prior to
the interview or any review thereof, according to regulations
prescribed by the Attorney General. Such consultation shall be
at no expense to the Government and shall not unreasonably
delay the process.

**(v)** "Credible fear of persecution" defined

For purposes of this subparagraph, the term "credible fear of
persecution" means that there is a significant possibility, taking
into account the credibility of the statements made by
the alien in support of the alien's claim and such other facts as
are known to the officer, that the alien could establish eligibility
for asylum under section 1158 of this title.

**(C)** Limitation on administrative review

Except as provided in subparagraph (B)(iii)(III), a removal order
entered in accordance with subparagraph (A)(i) or (B)(iii)(I) is not
subject to administrative appeal, except that the Attorney
General shall provide by regulation for prompt review of such an
order under subparagraph (A)(i) against an alien who claims under
oath, or as permitted under penalty of perjury under section 1746 of
title 28, after having been warned of the penalties for falsely making
such claim under such conditions, to have been lawfully admitted for
permanent residence, to have been admitted as a refugee under section

36

1157 of this title, or to have been granted asylum under section 1158 of this title.

**(D)** Limit on collateral attacks

In any action brought against an alien under section 1325(a) of this title or section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii).

**(E)** "Asylum officer" defined

As used in this paragraph, the term "asylum officer" means an immigration officer who—

> **(i)** has had professional training in country conditions, asylum law, and interview techniques comparable to that provided to full-time adjudicators of applications under section 1158 of this title, and

> **(ii)** is supervised by an officer who meets the condition described in clause (i) and has had substantial experience adjudicating asylum applications.

**(F)** Exception

Subparagraph (A) shall not apply to an alien who is a native or citizen of a country in the Western Hemisphere with whose government the United States does not have full diplomatic relations and who arrives by aircraft at a port of entry.

**(G)** Commonwealth of the Northern Mariana Islands

Nothing in this subsection shall be construed to authorize or require any person described in section 1158(e) of this title to be permitted to apply for asylum under section 1158 of this title at any time before January 1, 2014.

**(2) Inspection of other aliens**

**(A)** In general

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

**(B)** Exception

Subparagraph (A) shall not apply to an alien—

**(i)** who is a crewman,

**(ii)** to whom paragraph (1) applies, or

**(iii)** who is a stowaway.

**(C)** Treatment of aliens arriving from contiguous territory

In the case of an alien described in subparagraph (A) who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title.

**(3)** Enforcement by attorney general of a state

The attorney general of a State, or other authorized State officer, alleging a violation of the detention and removal requirements under paragraph (1) or (2) that harms such State or its residents shall have standing to bring an action against the Secretary of Homeland Security on behalf of such State or the residents of such State in an appropriate district court of the United States to obtain appropriate injunctive relief. The court shall advance on the docket and expedite the disposition of a civil action filed under this paragraph to the greatest extent practicable. For purposes of this paragraph,

38

a State or its residents shall be considered to have been harmed if the State or its residents experience harm, including financial harm in excess of $100.

**(4)** Challenge of decision

The decision of the examining immigration officer, if favorable to the admission of any alien, shall be subject to challenge by any other immigration officer and such challenge shall operate to take the alien whose privilege to be admitted is so challenged, before an immigration judge for a proceeding under section 1229a of this title.

## (c) Removal of aliens inadmissible on security and related grounds

**(1)** Removal without further hearing

If an immigration officer or an immigration judge suspects that an arriving alien may be inadmissible under subparagraph (A) (other than clause (ii)), (B), or (C) of section 1182(a)(3) of this title, the officer or judge shall—

> **(A)** order the alien removed, subject to review under paragraph (2);

> **(B)** report the order of removal to the Attorney General; and

> **(C)** not conduct any further inquiry or hearing until ordered by the Attorney General.

**(2)** Review of order

> **(A)** The Attorney General shall review orders issued under paragraph (1).

> **(B)** If the Attorney General—

>> **(i)** is satisfied on the basis of confidential information that the alien is inadmissible under subparagraph (A) (other than clause (ii)), (B), or (C) of section 1182(a)(3) of this title, and

39

**(ii)** after consulting with appropriate security agencies of the United States Government, concludes that disclosure of the information would be prejudicial to the public interest, safety, or security,

the Attorney General may order the alien removed without further inquiry or hearing by an immigration judge.

**(C)** If the Attorney General does not order the removal of the alien under subparagraph (B), the Attorney General shall specify the further inquiry or hearing that shall be conducted in the case.

**(3)** Submission of statement and information

The alien or the alien's representative may submit a written statement and additional information for consideration by the Attorney General.

**(d)** Authority relating to inspections

**(1)** Authority to search conveyances

Immigration officers are authorized to board and search any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States.

**(2)** Authority to order detention and delivery of arriving aliens

Immigration officers are authorized to order an owner, agent, master, commanding officer, person in charge, purser, or consignee of a vessel or aircraft bringing an alien (except an alien crewmember) to the United States—

**(A)** to detain the alien on the vessel or at the airport of arrival, and

**(B)** to deliver the alien to an immigration officer for inspection or to a medical officer for examination.

40

**(3)** Administration of oath and consideration of evidence

The Attorney General and any immigration officer shall have power to administer oaths and to take and consider evidence of or from any person touching the privilege of any alien or person he believes or suspects to be an alien to enter, reenter, transit through, or reside in the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service.

**(4)** Subpoena authority

> **(A)** The Attorney General and any immigration officer shall have power to require by subpoena the attendance and testimony of witnesses before immigration officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service, and to that end may invoke the aid of any court of the United States.

> **(B)** Any United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer may, in the event of neglect or refusal to respond to a subpoena issued under this paragraph or refusal to testify before an immigration officer, issue an order requiring such persons to appear before an immigration officer, produce books, papers, and documents if demanded, and testify, and any failure to obey such order of the court may be punished by the court as a contempt thereof.

41

## Addendum 3

*Note: This Addendum reflects all the decisions from district courts in this Circuit that Petitioners are aware of that address the issues in this appeal as of January 3, 2026. It excludes cases where courts have dismissed noncitizens' habeas petitions based on principles of prudential exhaustion, as the government has not advanced any exhaustion argument on appeal.*

### Chart of District Court Decisions in the Sixth Circuit Holding That 8 U.S.C § 1226 Rather Than § 1225(B)(2) Applies to Non-Citizens Who Entered Without Inspection

| Judge | Relevant Decisions as of January 3, 2026 (<u>TOTAL: 215</u>) |
|---|---|
| **E.D. Ky.** | |
| Bunning, David L. | *Ichich Xo v. Daley*, No. 25-cv-176, 2025 WL 3657230 (E.D. Ky. Dec. 17, 2025); *Issahaku v. Olson*, No. 25-cv-180, 2025 WL 3539290 (E.D. Ky. Dec. 10, 2025); *Pacheco-Acosta v. Olson*, No. 25-cv-186, 2025 WL 3542128 (E.D. Ky. Dec. 10, 2025); *Moyao Roman v. Olson*, No. 25-cv-169, 2025 WL 3268403 (E.D. Ky. Nov. 24, 2025) |
| **W.D. Ky.** | |
| Boom, Claria Horn | *Martinez-Elvir v. Olson*, No. 25-cv-589, 2025 WL 3006772 (W.D. Ky. Oct. 27, 2025) |
| Hale, David J. | *Singh v. Lewis*, No. 25-cv-133, 2025 WL 3298080 (W.D. Ky. Nov. 26, 2025); *Salinas v. Woosley*, No. 25-cv-121, 2025 WL 3243837 (W.D. Ky. Nov. 20, 2025); *Lopez v. Olson*, No. 25-cv-654, 2025 WL 3217036 (W.D. Ky. Nov. 18, 2025); *Alonso v. Tindall*, No. 25-cv-652, 2025 WL 3083920 (W.D. Ky. Nov. 4, 2025) |

| | |
|---|---|
| Jennings, Rebecca Grady | *Ramirez v. Lewis*, No. 25-cv-143, 2025 WL 3553676 (W.D. Ky. Dec. 11, 2025); *Edahi v. Lewis*, No. 25-cv-129, 2025 WL 3466682 (W.D. Ky. Nov. 27, 2025); *Orellana v. Noem*, No. 25-cv-112, 2025 WL 3006763 (W.D. Ky. Oct. 27, 2025); *Barrera v. Tindall*, No. 25-cv-541, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025) |
| Stivers, Greg N. | *Resendiz v. Noem*, No. 25-cv-00159, 2025 WL 3527284 (W.D. Ky. Dec. 9, 2025); *Aranda v. Olson*, No. 25-cv-00156, 2025 WL 3499061 (W.D. Ky. Dec. 5, 2025); *Mateo v. Noem*, No. 25-cv-00151, 2025 WL 3499062 (W.D. Ky. Dec. 5, 2025); *Del Villar v. Noem*, No. 25-cv-00137, 2025 WL 3231630 (W.D. Ky. Nov. 19, 2025) |
| **E.D. Mich.** | |
| Behm, F. Kay | *Zambrano Paz v. Raycraft*, No. 25-cv-13563, 2025 WL 3473361 (E.D. Mich. Dec. 3, 2025); *Ali Kadagan v. Raycraft*, No. 25-cv-13602, 2025 WL 3268895 (E.D. Mich. Nov. 24, 2025); *Romero Garcia v. Raycraft*, No. 25-cv-13407, 2025 WL 3252286 (E.D. Mich. Nov. 21, 2025); *Morales-Martinez v. Raycraft*, No. 25-cv-13303, 2025 WL 3124695 (E.D. Mich. Nov. 7, 2025) |
| Berg, Terrence G. | *Arredondo-Silva v. Raycraft*, No. 25-cv-13674, 2025 WL 3625781 (E.D. Mich. Dec. 15, 2025); *Garcia Rodriguez v. Raycraft*, No. 25-cv-13606, 2025 WL 3565685 (E.D. Mich. Dec. 12, 2025) |
| DeClercq, Susan K. | *Jimenez Garcia v. Raybon*, No. 25-cv-13086, 2025 WL 2976950 (E.D. Mich. Oct. 21, 2025) |
| Grey, Jonathan J.C. | *Lopez Lopez v. Raycraft*, No. 25-cv-13802, 2025 WL 3720434 (E.D. Mich. Dec. 22, 2025) |
| Kumar, Shalina D. | *Alvarez-Lopez v. U.S. Dep't of Homeland Sec.*, No. 25-cv-13098, 2025 WL 3525956 (E.D. Mich. Dec. 9, 2025); *Gimenez Gonzalez* |

43

| | |
|---|---|
| | *v. Raycraft*, No. 25-cv-13094, 2025 WL 3006185 (E.D. Mich. Oct. 27, 2025) |
| Leitman, Matthew F. | *Hurtado-Medina v. Raycraft*, No. 25-cv-13248, 2025 WL 3268896 (E.D. Mich. Nov. 24, 2025) |
| Levy, Judith E. | *Amaya v. Raycraft*, No. 25-cv-13539, 2025 WL 3530273 (E.D. Mich. Dec. 9, 2025); *Mauricio Diego v. Raycraft*, No. 25-13288, 2025 WL 3159106 (E.D. Mich. Nov. 12, 2025) |
| Ludington, Thomas L. | *Cervantes Morales v. Raycraft*, No. 25-cv-13434, 2025 WL 3543611 (E.D. Mich. Dec. 10, 2025); *Morales Rodriguez v. Raycraft*, No. 25-cv-13560, 2025 WL 3543614 (E.D. Mich. Dec. 10, 2025); *Ramirez v. Raycraft*, No. 25-cv-13444, 2025 WL 3543612 (E.D. Mich. Dec. 10, 2025); *Contreras-Lomeli v. Raycraft*, No. 25-cv-12826, 2025 WL 2976739 (E.D. Mich. Oct. 21, 2025) |
| McMillion, Brandy R. | *Velasco-Sanchez v. Raycraft*, No. 25-cv-13730, 2025 WL 3553672 (E.D. Mich. Dec. 11, 2025); *Casio-Mejia v. Raycraft*, No. 25-cv-13032, 2025 WL 2976737 (E.D. Mich. Oct. 21, 2025); *Santos Franco v. Raycraft*, No. 25-cv-13188, 2025 WL 2977118 (E.D. Mich. Oct. 21, 2025); *Pacheco Mayen v. Raycraft*, No. 25-cv-13056, 2025 WL 2978529 (E.D. Mich. Oct. 17, 2025); *Diaz Sandoval v. Raycraft*, No. 25-cv-12987, 2025 WL 2977517 (E.D. Mich. Oct. 17, 2025); ***Contreras-Cervantes v. Raycraft*, No. 25-cv-13073, 2025 WL 2952796 (E.D. Mich. Oct. 17, 2025)**; ***Lopez-Campos v. Raycraft*, No. 25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025)** |
| Michelson, Laurie J. | *Robledo Gonzalez v. Raycraft*, No. 25-cv-13502, 2025 WL 3218242 (E.D. Mich. Nov. 17, 2025) |
| Parker, Linda V. | *Brito Hidalgo v. Raycraft*, No. 25-cv-13588, 2025 WL 3473360 (E.D. Mich. Dec. 3, 2025); *Lopez Herrera v. Raycraft*, No. 25-cv-13627, 2025 WL 3473358 (E.D. Mich. Dec. 3, 2025); *Torres-* |

44

| | |
|---|---|
| | *Vasquez v. Raycraft*, No. 25-cv-13571, 2025 WL 3473359 (E.D. Mich. Dec. 3, 2025) |
| White, Robert J. | ***Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025)** |

| | |
|---|---|
| | **W.D. Mich.** |
| Beckering, Jane M. | *Sepulveda v. Raycraft*, No. 25-cv-1731, 2025 WL 3777030 (W.D. Mich. Dec. 31, 2025); *Huerta Morales v. Raycraft*, No. 25-cv-1842, 2025 WL 3757064 (W.D. Mich. Dec. 29, 2025); *Gamboa Garcia v. Raycraft*, No. 25-cv-1701, 2025 WL 3708947 (W.D. Mich. Dec. 22, 2025); *Cruz Ramos v. Raycraft*, No. 25-cv-1712, 2025 WL 3697296 (W.D. Mich. Dec. 19, 2025); *Gonzalez Labarca v. Raycraft*, No. 25-cv-1636, 2025 WL 3687320 (W.D. Mich. Dec. 19, 2025); *Tellez Fernandez v. Raycraft*, No. 25-cv-1702, 2025 WL 3687333 (W.D. Mich. Dec. 19, 2025); *Torres-Mejia v. Trump*, No. 25-cv-1623, 2025 WL 3684258 (W.D. Mich. Dec. 19, 2025); *Calixto-Navarro v. Martin*, No. 25-cv-1664, 2025 WL 3677467 (W.D. Mich. Dec. 18, 2025); *Leal Guzman v. U.S. Dep't of Homeland Sec.*, No. 25-cv-1531, 2025 WL 3679120 (W.D. Mich. Dec. 18, 2025); *Caal-Col v. Noem*, No. 25-cv-1591, 2025 WL 3649535 (W.D. Mich. Dec. 17, 2025); *Boutta v. Raycraft*, No. 25-cv-1559, 2025 WL 3628232 (W.D. Mich. Dec. 15, 2025); *Olivares Rangel v. Raycraft*, No. 25-cv-1522, 2025 WL 3628225 (W.D. Mich. Dec. 15, 2025); *Mejia v. Noem*, No. 25-cv-1594, 2025 WL 3559137 (W.D. Mich. Dec. 12, 2025); *Singh Multani v. Noem*, No. 25-cv-1513, 2025 WL 3550608 (W.D. Mich. Dec. 11, 2025); *Depaz v. Raycraft*, No. 25-cv-1500, 2025 WL 3534974 (W.D. Mich. Dec. 10, 2025); *Mendoza Siguencia v. Raycraft*, No. 25-cv-1532, 2025 WL 3537550 (W.D. Mich. Dec. 10, 2025); *Rivera Coyote v. Unknown Party*, No. 25-cv-1503, 2025 WL 3534158 (W.D. Mich. Dec. 10, 2025); *Alaniz Perera v. Raycraft*, No. 25-cv-1496, 2025 WL 3496144 (W.D. Mich. Dec. 5, 2025); *Chavez-Perez v. Raycraft*, No. 25-cv-1576, 2025 WL 3480648 (W.D. Mich. Dec. 4, 2025); *Marin Estupinan v. Noem*, No. 25-cv-1580, 2025 WL 3481841 (W.D. Mich. Dec. 4, 2025); *Salcido v. Raycraft*, No. 25-cv-1453, 2025 WL 3481799 (W.D. Mich. Dec. 4, 2025); *Salvatierra Mazariegos v. Raycraft*, No. 25- |

45

| | |
|---|---|
| | cv-1470, 2025 WL 3481806 (W.D. Mich. Dec. 4, 2025); *Bustamante v. Noem*, No. 25-cv-1538, 2025 WL 3469850 (W.D. Mich. Dec. 3, 2025); *Calzada Espinosa v. Noem*, No. 25-cv-1396, 2025 WL 3455533 (W.D. Mich. Dec. 2, 2025); *Flores Garcia v. Noem*, No. 25-cv-1387, 2025 WL 3458531 (W.D. Mich. Dec. 2, 2025); *Rivero v. Noem*, No. 25-cv-1294, 2025 WL 3438303 (W.D. Mich. Dec. 1, 2025); *Canedo Cardozo v. Noem*, No. 25-cv-1415, 2025 WL 3274381 (W.D. Mich. Nov. 25, 2025); *Castillo Moreno v. Noem*, No. 25-cv-1491, 2025 WL 3280271 (W.D. Mich. Nov. 25, 2025); *Orellano Lopez v. Lynch*, No. 25-cv-1459, 2025 WL 3280262 (W.D. Mich. Nov. 25, 2025); *Soto-Medina v. Lynch*, No. 25-cv-1392, 2025 WL 3267761 (W.D. Mich. Nov. 24, 2025); *Unaucho-Castro v. Unknown Party*, No. 25-cv-1318, 2025 WL 3264436 (W.D. Mich. Nov. 24, 2025); *Curillo v. Noem*, No. 25-cv-1340, 2025 WL 3235737 (W.D. Mich. Nov. 20, 2025); *Orozco-Martinez v. Lynch*, No. 25-cv-1353, 2025 WL 3223786 (W.D. Mich. Nov. 19, 2025); *Martinez Guerra v. Noem*, No. 25-cv-1341, 2025 WL 3204289 (W.D. Mich. Nov. 17, 2025); *Sevilla v. Noem*, No. 25-cv-1325, 2025 WL 3200698 (W.D. Mich. Nov. 17, 2025); *Contreras Alvarez v. Noem*, No. 25-cv-1313, 2025 WL 3151948 (W.D. Mich. Nov. 12, 2025); *Escobar-Ruiz v. Raycraft*, No. 25-cv-1232, 2025 WL 3039255 (W.D. Mich. Oct. 31, 2025); *Marin Garcia v. Noem*, No. 25-cv-1271, 2025 WL 3017200 (W.D. Mich. Oct. 29, 2025); ***Sanchez Alvarez v. Noem**, **No. 25-cv-1090, 2025 WL 2942648 (W.D. Mich. Oct. 17, 2025)*** |
| Jarbou, Hala Y. | *Mohamed v. Raycraft*, No. 25-cv-1836, 2026 WL 19384 (W.D. Mich. Jan. 2, 2026); *Hernandez v. Noem*, No. 25-cv-1823, 2025 WL 3769130 (W.D. Mich. Dec. 31, 2025); *Reynoso v. Raycraft*, No. 25-cv-1890, 2025 WL 3769139 (W.D. Mich. Dec. 31, 2025); *Garcia Hernandez v. Raycraft*, No. 25-cv-1759, 2025 WL 3765468 (W.D. Mich. Dec. 30, 2025); *Vanegas v. Raycraft*, No. 25-cv-1778, 2025 WL 3765466 (W.D. Mich. Dec. 30, 2025); *Ruiz-Gonzalez v. Raycraft*, No. 25-cv-1810, 2025 WL 3734583 (W.D. Mich. Dec. 26, 2025); *Singh v. Raycraft*, No. 25-cv-1486, 2025 WL 3713719 (W.D. Mich. Dec. 23, 2025); *Palomino v. Raycraft*, No. 25-cv-1725, 2025 WL 3708946 (W.D. Mich. Dec. 22, 2025); *Duque Tenas v. Raycraft*, No. 25-cv-1711, 2025 WL 3697299 (W.D. Mich. Dec. 19, 2025); *Frias Briceno v. Raycraft*, |

46

No. 25-cv-1630, 2025 WL 3679127 (W.D. Mich. Dec. 18, 2025); *Garcia Medina v. Noem*, No. 25-cv-1526, 2025 WL 3679128 (W.D. Mich. Dec. 18, 2025); *Tipan-Lutuala v. Noem*, No. 25-cv-1675, 2025 WL 3654615 (W.D. Mich. Dec. 17, 2025); *Cuero v. Noem*, No. 25-cv-1600, 2025 WL 3640282 (W.D. Mich. Dec. 16, 2025); *Valencia Magdaleno v. Raycraft*, No. 25-cv-1706, 2025 WL 3637413 (W.D. Mich. Dec. 16, 2025); *Estrada Perez v. Noem*, No. 25-cv-1627, 2025 WL 3628202 (W.D. Mich. Dec. 15, 2025); *Singh v. Noem*, No. 25-cv-1648, 2025 WL 3628287 (W.D. Mich. Dec. 15, 2025); *Antele Cobix v. Raycraft*, No. 25-cv-1669, 2025 WL 3562651 (W.D. Mich. Dec. 12, 2025); *Mendez-Campos v. Lynch*, No. 25-cv-1618, 2025 WL 3562636 (W.D. Mich. Dec. 12, 2025); *Rakhmatov v. Raycraft*, No. 25-cv-1651, 2025 WL 3550798 (W.D. Mich. Dec. 11, 2025); *Morales v. Bondi*, No. 25-cv-1472, 2025 WL 3525488 (W.D. Mich. Dec. 9, 2025); *Enriques Becerra v. Raycraft*, No. 25-cv-1506, 2025 WL 3511095 (W.D. Mich. Dec. 8, 2025); *Gramajo Reyna v. Raycraft*, No. 25-cv-1575, 2025 WL 3513891 (W.D. Mich. Dec. 8, 2025); *Alvarez Osorio v. Raycraft*, No. 25-cv-1525, 2025 WL 3496152 (W.D. Mich. Dec. 5, 2025); *Pie v. Noem*, No. 25-cv-1564, 2025 WL 3496156 (W.D. Mich. Dec. 5, 2025); *Deleon Ortiz v. Raycraft*, No. 25-cv-1467, 2025 WL 3481808 (W.D. Mich. Dec. 4, 2025); *Barcenas Garcia v. Raycraft*, No. 25-cv-1497, 2025 WL 3454293 (W.D. Mich. Dec. 2, 2025); *Palmito Ordonez v. Noem*, No. 25-cv-1501, 2025 WL 3454296 (W.D. Mich. Dec. 2, 2025); *Correa v. Raycraft*, No. 25-cv-1431, 2025 WL 3442708 (W.D. Mich. Dec. 1, 2025); *Hernandez Lopez v. Raycraft*, No. 25-cv-1412, 2025 WL 3290655 (W.D. Mich. Nov. 26, 2025); *Delcid v. Noem*, No. 25-cv-1366, 2025 WL 3251139 (W.D. Mich. Nov. 21, 2025); *Melgar v. Noem*, No. 25-cv-1377, 2025 WL 3240058 (W.D. Mich. Nov. 20, 2025); *Soto Beltran v. Raycraft*, No. 25-cv-1352, 2025 WL 3237429 (W.D. Mich. Nov. 20, 2025); *Hernandez Franco v. Raycraft*, No. 25-cv-1274, 2025 WL 3223780 (W.D. Mich. Nov. 19, 2025); *Pastor v. Raycraft*, No. 25-cv-1301, 2025 WL 3223777 (W.D. Mich. Nov. 19, 2025); *Juarez Mendez v. Raycraft*, No. 25-cv-1323, 2025 WL 3214100 (W.D. Mich. Nov. 18, 2025); *Lara v. Noem*, No. 25-cv-1332, 2025 WL 3170876 (W.D. Mich. Nov. 13, 2025); *Hernandez Garcia v. Raycraft*, No. 25-cv-1281, 2025 WL

47

| | |
|---|---|
| | 3122800 (W.D. Mich. Nov. 7, 2025); *Rodriguez Serrano v. Noem*, No. 25-cv-1320, 2025 WL 3122825 (W.D. Mich. Nov. 7, 2025) |
| Jonker, Robert J. | *Ramirez Adame v. Raycraft*, No. 25-cv-1820, 2026 WL 19381 (W.D. Mich. Jan. 3, 2026); *Cid-Barrios v. Raycraft*, No. 25-cv-1898, 2025 WL 3771231 (W.D. Mich. Dec. 31, 2025); *Fernandez Pichardo v. Raycraft*, No. 25-cv-1815, 2025 WL 3771332 (W.D. Mich. Dec. 31, 2025); *Pena v. Raycraft*, No. 25-cv-1922, 2025 WL 3777048 (W.D. Mich. Dec. 31, 2025); *Verano Cabra v. Raycraft*, No. 25-cv-1777, 2025 WL 3777058 (W.D. Mich. Dec. 31, 2025); *Juarez v. Raycraft*, No. 25-cv-1746, 2025 WL 3728286 (W.D. Mich. Dec. 25, 2025); *Dorantes-Martinez v. Raycraft*, No. 25-cv-1691, 2025 WL 3708928 (W.D. Mich. Dec. 22, 2025); *Dominguez Hernandez v. Bondi*, No. 25-cv-1680, 2025 WL 3687353 (W.D. Mich. Dec. 19, 2025); *Lule Espinosa v. Gradiska*, No. 25-cv-1671, 2025 WL 3697302 (W.D. Mich. Dec. 19, 2025); *Singh v. Raycraft*, No. 25-cv-1676, 2025 WL 3684263 (W.D. Mich. Dec. 19, 2025); *Acosta-Mendez v. Dunbar*, No. 25-cv-1653, 2025 WL 3679123 (W.D. Mich. Dec. 18, 2025); *Badjie v. Raycraft*, No. 25-cv-1754, 2025 WL 3679125 (W.D. Mich. Dec. 18, 2025); *Beltran v. Lynch*, No. 25-cv-1689, 2025 WL 3673580 (W.D. Mich. Dec. 18, 2025); *Jimenez v. Noem*, No. 25-cv-1385, 2025 WL 3673565 (W.D. Mich. Dec. 18, 2025); *Atencio-Pirela v. Raycraft*, No. 25-cv-1505, 2025 WL 3652912 (W.D. Mich. Dec. 17, 2025); *Hernandez Claudio v. Noem*, No. 25-cv-1661, 2025 WL 3654617 (W.D. Mich. Dec. 17, 2025); *Carval v. Lynch*, No. 25-cv-1465, 2025 WL 3635781 (W.D. Mich. Dec. 16, 2025); *Chavez Rojas v. Raycraft*, No. 25-cv-1619, 2025 WL 3628268 (W.D. Mich. Dec. 15, 2025); *Corona Cardena v. Raycraft*, No. 25-cv-1709, 2025 WL 3635783 (W.D. Mich. Dec. 15, 2025); *Toaquiza Ante v. Noem*, No. 25-cv-1650, 2025 WL 3628290 (W.D. Mich. Dec. 15, 2025); *Zugaide Jimenez v. Noem*, No. 25-cv-1512, 2025 WL 3628191 (W.D. Mich. Dec. 15, 2025); *Rangel Espinosa v. Noem*, No. 25-cv-1417, 2025 WL 3628254 (W.D. Mich. Dec. 15, 2025); *Acuna Sanchez v. Noem*, No. 25-cv-1442, 2025 WL 3562577 (W.D. Mich. Dec. 12, 2025); *Becerra-Hernandez v. Lynch*, No. 25-cv-1464, 2025 WL 3562572 (W.D. Mich. Dec. 12, 2025); *Perez v. Noem*, No. 25-cv-1488, 2025 WL 3562634 (W.D. Mich. Dec. 12, 2025); *Avila Maltos v. Noem*, No. |

48

| | |
|---|---|
| | 25-cv-1299, 2025 WL 3550605 (W.D. Mich. Dec. 11, 2025); *Leon Gonzalez v. Dunbar*, No. 25-cv-1510, 2025 WL 3534108 (W.D. Mich. Dec. 10, 2025); *Guillen Mendez v. Unknown Party 1*, No. 25-cv-1407, 2025 WL 3522118 (W.D. Mich. Dec. 9, 2025); *Suarez Guerrero v. Noem*, No. 25-cv-1572, 2025 WL 3520407 (W.D. Mich. Dec. 9, 2025); *Hernandez Sarmiento v. Raycraft*, No. 25-cv-1534, 2025 WL 3458555 (W.D. Mich. Dec. 2, 2025); *Rivera-Cruz v. Raycraft*, No. 25-cv-1250, 2025 WL 3458503 (W.D. Mich. Dec. 2, 2025); *Farias v. Noem*, No. 25-cv-1368, 2025 WL 3439807 (W.D. Mich. Dec. 1, 2025); *Huaman-Rodriguez v. Lynch*, No. 25-cv-1330, 2025 WL 3267768 (W.D. Mich. Nov. 24, 2025); *Delgado Delgado v. Noem*, No. 25-cv-1249, 2025 WL 3251144 (W.D. Mich. Nov. 21, 2025) |
| Maloney, Paul L. | *Magdaleno Rojas v. Lynch*, No. 25-cv-1818, 2026 WL 19383 (W.D. Mich. Jan. 2, 2026); *Pascual Lopez v. Raycraft*, No. 25-cv-1832, 2026 WL 19382 (W.D. Mich. Jan. 2, 2026); *Lopez Ortiz v. Raycraft*, No. 25-cv-1757, 2025 WL 3777031 (W.D. Mich. Dec. 31, 2025); *Andarcia Jimenez v. Noem*, No. 25-cv-1556, 2025 WL 3730935 (W.D. Mich. Dec. 26, 2025); *Cuarez v. Raycraft*, No. 25-cv-1498, 2025 WL 3734651 (W.D. Mich. Dec. 26, 2025); *Hernandez-Cordova v. Lynch*, No. 25-cv-1700, 2025 WL 3734649 (W.D. Mich. Dec. 26, 2025); *Mejia-Lorenzo v. Lynch*, No. 25-cv-1698, 2025 WL 3734703 (W.D. Mich. Dec. 26, 2025); *Mendez v. Noem*, No. 25-cv-1841, 2025 WL 3734702 (W.D. Mich. Dec. 26, 2025); *Mendez v. Raycraft*, No. 25-cv-1717, 2025 WL 3734621 (W.D. Mich. Dec. 26, 2025); *Ruiz-Rebollo v. Raycraft*, No. 25-cv-1769, 2025 WL 3734705 (W.D. Mich. Dec. 26, 2025); *Aguilar Fuentes v. Olson*, No. 25-cv-1634, 2025 WL 3649563 (W.D. Mich. Dec. 17, 2025); *Alonso Cruz v. Noem*, No. 25-cv-1590, 2025 WL 3649528 (W.D. Mich. Dec. 17, 2025); *Amezquita-Espinoza v. Noem*, No. 25-cv-1611, 2025 WL 3654624 (W.D. Mich. Dec. 17, 2025); *Mantilla Mora v. Unknown Party*, No. 25-cv-1683, 2025 WL 3653155 (W.D. Mich. Dec. 17, 2025); *Prajapati v. Lynch*, No. 25-cv-1584, 2025 WL 3649539 (W.D. Mich. Dec. 17, 2025); *Sanchez v. Noem*, No. 25-cv-1514, 2025 WL 3649527 (W.D. Mich. Dec. 17, 2025); *Singh v. Raycraft*, No. 25-cv-1743, 2025 WL 3649554 (W.D. Mich. Dec. 17, 2025); *Zhang v. Noem*, No. 25-cv-1655, 2025 WL 3654619 (W.D. Mich. |

49

Dec. 17, 2025); *Gallardo Abelino v. Noem*, No. 25-cv-1562, 2025 WL 3562588 (W.D. Mich. Dec. 12, 2025); *Murzakulov v. Noem*, No. 25-cv-1589, 2025 WL 3562649 (W.D. Mich. Dec. 12, 2025); *Ramirez Ibanez v. Lynch*, No. 25-cv-1493, 2025 WL 3525324 (W.D. Mich. Dec. 9, 2025); *Ponce Bonilla v. Raycraft*, No. 25-cv-1515, 2025 WL 3492778 (W.D. Mich. Dec. 5, 2025); *Rivera v. Raycraft*, No. 25-cv-1454, 2025 WL 3492774 (W.D. Mich. Dec. 5, 2025); *Perlazo v. Lynch*, No. 25-cv-1445, 2025 WL 3484740 (W.D. Mich. Dec. 4, 2025); *Aguilar-Duran v. Unknown Party*, No. 25-cv-1418, 2025 WL 3458572 (W.D. Mich. Dec. 2, 2025); *Hernandez Quintero v. Noem*, No. 25-cv-1394, 2025 WL 3458504 (W.D. Mich. Dec. 2, 2025); *Labrada-Argibay v. Lynch*, No. 25-cv-1448, 2025 WL 3458583 (W.D. Mich. Dec. 2, 2025); *Leon Lopez v. Lynch*, No. 25-cv-1379, 2025 WL 3458508 (W.D. Mich. Dec. 2, 2025); *Lira Pernalete v. Lynch*, No. 25-cv-1391, 2025 WL 3458542 (W.D. Mich. Dec. 2, 2025); *Perez-Jasso v. Lynch*, No. 25-cv-1345, 2025 WL 3458491 (W.D. Mich. Dec. 2, 2025); *Ramirez v. Lynch*, No. 25-cv-1408, 2025 WL 3267771 (W.D. Mich. Nov. 24, 2025); *Rodriguez Quezada v. Noem*, No. 25-cv-1441, 2025 WL 3267784 (W.D. Mich. Nov. 24, 2025); *Castro Sanchez v. Noem*, No. 25-cv-1361, 2025 WL 3237435 (W.D. Mich. Nov. 20, 2025); *Ceballos Ortiz v. Raycraft*, No. 25-cv-1328, 2025 WL 3223771 (W.D. Mich. Nov. 19, 2025); *Martinez v. Unknown Party*, No. 25-cv-1298, 2025 WL 3223774 (W.D. Mich. Nov. 19, 2025); *Nava Ibarra v. Noem*, No. 25-cv-1335, 2025 WL 3223765 (W.D. Mich. Nov. 19, 2025); *Gonzalez v. Noem*, No. 25-cv-1315, 2025 WL 3170879 (W.D. Mich. Nov. 13, 2025); *Hernandez v. Noem*, No. 25-cv-1307, 2025 WL 3170872 (W.D. Mich. Nov. 13, 2025); *Lucero Lucero v. Noem*, No. 25-cv-1295, 2025 WL 3165235 (W.D. Mich. Nov. 12, 2025); *Salgado Mendoza v. Noem*, No. 25-cv-1252, 2025 WL 3077589 (W.D. Mich. Nov. 4, 2025); *De Jesus Ramirez v. Noem*, No. 25-cv-1261, 2025 WL 3039266 (W.D. Mich. Oct. 31, 2025); *Ruiz Mejia v. Noem*, No. 25-cv-1227, 2025 WL 3041827 (W.D. Mich. Oct. 31, 2025); *Rodriguez v. Noem*, No. 25-cv-1196, 2025 WL 3022212 (W.D. Mich. Oct. 29, 2025); *Puerto-Hernandez v. Lynch*, No. 25-cv-1097, 2025 WL 3012033 (W.D. Mich. Oct. 28, 2025); *Rodriguez Carmona v. Noem*, No. 25-cv-1131, 2025 WL 2992222 (W.D. Mich. Oct. 24, 2025)

| N.D. Ohio | |
|---|---|
| Lioi, Sara | *Chavez v. Director of Detroit Field Office*, No. 25-cv-2061, 2025 WL 3187080 (N.D. Ohio Nov. 14, 2025) |
| Polster, Dan Aaron | *Macias v. Raycraft*, No. 25-cv-2642, 2025 WL 3525262 (N.D. Ohio Dec. 9, 2025) |
| Pearson, Benita Y. | *Lopez v. Raycraft*, No. 25-cv-2449, 2025 WL 3280344 (N.D. Ohio Nov. 25, 2025) |
| E.D. Tenn. | |
| Crytzer, Katherine A. | *Patino v. Ladwig*, No. 25-cv-569, 2025 WL 3628450 (E.D. Tenn. Dec. 15, 2025) |
| M.D. Tenn. | |
| Richardson, Eli | *Cardona v. Ladwig*, No. 25-cv-01451, 2025 WL 3722009 (M.D. Tenn. Dec. 23, 2025) |
| W.D. Tenn. | |
| Lipman, Sheryl H. | *Godinez-Lopez v. Ladwig*, No. 25-cv-02962, 2025 WL 3047889 (W.D. Tenn. Oct. 31, 2025) |
| Parker, Thomas L. | *Moreno-Espinoza v. Ladwig*, No. 25-cv-03093, 2025 WL 3691452 (W.D. Tenn. Dec. 19, 2025); *Urrutia-Diaz v. Ladwig*, No. 25-cv-03098, 2025 WL 3689158 (W.D. Tenn. Dec. 19, 2025); *Cordova v. Ladwig*, No. 25-cv-03037, 2025 WL 3679764 (W.D. Tenn. Dec. 18, 2025); *Pena v. Ladwig*, No. 25-cv-03082, 2025 WL 3679766 (W.D. Tenn. Dec. 18, 2025); *Padilla-Ugsha v. Ladwig*, No. 25-cv-03045, 2025 WL 3638007 (W.D. Tenn. Dec. 15, 2025); *Monge-Nunez v. Ladwig*, No. 25-cv-03043, 2025 WL 3565348 (W.D. Tenn. Dec. 12, 2025) |

51

52

**Chart of District Court Decisions in the Sixth Circuit Holding That § 1225(b)(2) Rather Than 8 U.S.C § 1226 Applies to Non-Citizens Who Entered Without Inspection**

| Judge | Relevant Decisions as of January 3, 2026 (<u>TOTAL: 2</u>) |
|---|---|
| **S.D. Ohio** | |
| Cole, Douglas R. | *Lucero v. Field Off. Dir.*, No. 25-cv-823, 2025 WL 3718730 (S.D. Ohio Dec. 23, 2025); *Coronado v. Sec'y, Dep't of Homeland Sec.*, No. 25-cv-831, 2025 WL 3628229 (S.D. Ohio Dec. 15, 2025) |

52